IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF REGENCY CONSTRUCTION, INC. | * | CIVIL ACTION NO. 02-1707 |
| | * | JUDGE JAMES |
| VERSUS | * | MAGISTRATE JUDGE HAYES |
| J.H. PARKER CONSTRUCTION CO., INC., SWISS REINSURANCE AMERICA CORPORATION and OSMENT AND COMPANY | | |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are Cross-Motions for Summary Judgment filed by the plaintiff, Regency Construction, Inc. ("Regency"), (Doc. No. 96) and the defendant, Swiss Reinsurance America Corporation ("Swiss Re"). (Doc. No. 100).[1] For reasons stated below, it is recommended that Regency's Motion for Summary Judgment be **GRANTED**, and Swiss Re's Motion for Summary Judgment be **DENIED.**

## STATEMENT OF THE CASE

The current dispute stems from a subcontractor's breach of contract while working on a federal construction project subject to the Miller Act, 40 U.S.C. §§ 3131-3134. On December 7, 1999, J.H. Parker ("Parker") entered into a contract with the United States Army Corps of Engineers ("Corps") to work on a project entitled "Wilson Point to Point Lookout Levee Enlargement and Berms" ("Project"). As required under the Miller Act, Parker posted a payment bond with Amwest

---

[1] Swiss has filed two identical Motions for Summary Judgment (Doc. Nos. 98, 100) that are also nearly identical to its Opposition to the Motion for Summary Judgment of Regency Corporation, Inc. (Doc. No. 102). Based on the Court's order on August, 23, 2005, granting Regency's ex parte motion to adopt, as a reply to Swiss Re' Opposition to Regency's Motion for Summary Judgment, its Opposition to Swiss Re's Motion for Summary Judgment, the Court will treat this case as involving cross-motions for summary judgment.

Surety Insurance Company ("Amwest") as the original surety. On January 7, 2000, Swiss Re, pursuant to a reinsurance agreement with Amwest, replaced Amwest as surety.

During the Project, Parker subcontracted a portion of the construction work to Osment and Company ("Osment"). On May 31, 2001, Osment entered into a seven-month, written lease with Regency for two tractors and four scrapers. In exchange for using the equipment, the lease obligated Osment to make monthly payments of $13,788.00, plus interest due on any past due amounts. ¶¶ 6, 15 of Rental Agreement. In the event that Regency filed suit to recover payment under the lease, section 3 of the lease provided that Osment was to "pay all costs and reasonable attorney's fees incurred by Lessor [Regency] in such suit or suits." ¶3 of Rental Agreement. Osment also made certain promises with respect to the equipment's condition upon expiration of the lease. Section 7 provided:

> Upon termination of the rental Lessee [Osment] shall return the Equipment to the Lessor [Regency] in as good condition as when received by the Lessee [Osment], ordinary wear and tear excepted. Lessee [Osment] shall pay for any damage to the Equipment and for any missing parts or accessories . . . . Lessee [Osment] shall also pay all costs of cleaning the Equipment if required to return the Equipment to the same condition as when received by Lessee.

¶7 of Rental Agreement.

After making the first four lease payments, Osment defaulted on the remaining payments, leaving an outstanding balance of $41,052.00. Upon the lease's expiration, Osment returned the equipment to Regency in a damaged state that required $10,749.12 worth of repairs. Between December 14, 2001, and January 20, 2002, Regency provided Parker and Swiss Re with timely notice of Osment's default and outstanding balance.

On August 9, 2002, Regency filed suit against Osment, Parker, and Swiss Re seeking to recover the $41,052.00 in outstanding rental payments, plus interest; $10,749.12 in repair costs for damage to the equipment; and attorneys' fees and other legal expenses. In response to the defendants'

failure to comply with Regency's repeated discovery requests, the Court, on October 7, 2003, ordered Parker and Swiss Re to pay $1,050.00 each and Osment to pay $950.00 in attorneys' fees. The order was corrected on May 24, 2004, to delete any reference to Swiss Re and to impose additional attorney's fees of $2,068.38 against Parker. While Osment complied with the Court's order, Parker did not. Finally, as a result of Parker's repeated failures to provide discovery, pay sanctions for failing to provide discovery, or to enroll new counsel, the Court, on January 19, 2005, entered default judgment against Parker for the principal amount of $51,801.12 with interest from the date of default, and for attorneys' fees and costs in the amount of $25,926.64[2], with interest from the date of judgment. Neither Parker, as general contractor, nor Swiss Re, as surety, has paid the judgment.

Pursuant to the Miller Act, Regency now seeks to recover the above amounts from Swiss Re. Regency also seeks to recover from Swiss Re all other unpaid attorneys' fees it has incurred in connection with these proceedings, including those awarded as discovery sanctions against Parker.

While Swiss Re concedes its liability for the outstanding rental payments Osment owed, it claims that, as a matter of law, it is not liable for the repair costs or for any attorneys' fees. With respect to the repair costs, Swiss Re claims that a surety under the Miller Act can only be held liable for repairs due to ordinary wear and tear; since the contract with Osment specifically excluded Osment from liability for ordinary wear and tear, Swiss Re argues that it, similarly, is not liable. As for the attorneys' fees, Swiss Re cites several cases from the United States Court of Appeals for the Fifth Circuit that allegedly repudiate precedent clearly permitting recovery of attorneys' fees under the Miller Act. Swiss Re maintains that, at the very least, the Miller Act was not intended to permit recovery of attorneys' fees awarded as discovery sanctions and therefore it is not responsible for

---

[2] This amount does not include the previous awards of attorneys' fees against Parker in the amounts of $1,050.00 and $2,068.38, or the fees in the amount of $950.00 previously paid by Osment.

3

those ordered against Parker.

## **LAW AND ANALYSIS**

<u>The Miller Act</u>

Congress enacted the Miller Act, 40 U.S.C. §§ 3131-3134, to protect suppliers of labor or materials to contractors and subcontractors working on federal construction projects. *See* 40 U.S.C. § 3131; *F.D. Rich Co., Inc. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 122 (1974); *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 217 (1957). Unlike private construction projects where suppliers of labor or materials can secure a mechanic's lien against the improved property for any unpaid bills, suppliers of the same to federal construction projects can obtain no such security interest. *See F.D. Rich Co., Inc.*, 417 U.S. at 122. The Miller Act, however, serves as a remedial substitute by requiring all general contractors to post a surety bond "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract." 40 U.S.C. § 3131(b)(2); *see Glassell-Taylor Co. v. Magnolia Petroleum Co.*, 153 F.2d 527, 529-30 (5th Cir. 1946). Both subcontractors and persons having a direct contractual relationship with subcontractors, including renters and lessors, may bring a civil action on the payment bond against a general contractor and its surety. *See* 40 U.S.C § 3134(b)(2); *Illinois Surety Co. v. John Davis Co.*, 244 U.S. 376, 383 (1917).

**Repair Costs**

Swiss Re contends that it is not liable for Regency's repair costs as a matter of law and fact. Swiss Re argues, by citing two cases from the United States Court of Appeals for the Tenth Circuit[3], that a surety under the Miller Act can only be held liable for repairs costs associated with ordinary

---

[3] *United States ex rel. Rent it Co., Inc. v. Aetna Cas. & Sur. Co.*, 988 F.2d 88 (10th Cir. 1993); *Continental Cas. Co. v. Clarence L. Boyd Co.*, 140 F.2d 115 (10 Cir. 1944).

4

wear and tear. Accordingly, because the contract between Regency and Osment protected Osment from liability for this specific form of repairs, Swiss Re claims that it is also protected. Swiss Re, however, has apparently overlooked a controlling Fifth Circuit ruling permitting recovery of repair and replacement costs regardless of their nature.

In *United States v. Llewellyn Machinery Corporation*, the Fifth Circuit enforced against a Miller Act surety a clause in a rental contract between a supplier of construction equipment and a general contractor that obligated the general contractor to "assume all responsibility for damages or loss to (the said) eqpt." 268 F.2d 610 (5th Cir. 1959). Although the court recognized that, at first glance, repair and replacement costs did not necessarily fall within "labor and materials" covered by the Miller Act, it nevertheless held the surety liable based on the Miller Act's remedial nature and its declared purpose "to protect those who furnish labor or material to public works."[4] *Id.* at 611 (citing *Glassell-Taylor Co. v. Magnolia Petroleum Co.* 153 F.2d 527, 529 (5th Cir. 1946)). As the court noted, the surety could have justifiably restricted "the nature of the obligations which were undertaken" by the general contractor instead of benefitting, as it did, from an "undertaking based on a monthly rental of a lesser amount if the contract had been completed without the loss of the equipment." *Id.* at 611-12. As a surety responsible for the general contractor's contractual obligations, the court found no reason why the surety should not be held liable for replacing the destroyed equipment. *Id.* at 612.

While the Tenth Circuit may indeed adhere to a distinction between different types of repair costs, the Fifth Circuit, and therefore this Court, does not. Swiss Re, as surety of Parker, the general

---

[4] The Court finds no distinction between liability for replacement costs or repair costs. Indeed, in upholding the surety's liability for replacing the lost equipment in *Llewellyn*, the Fifth Circuit relied on a Fourth Circuit decision permitting recovery of repair costs from a Miller Act surety. 268 F.2d 610, 611 (5th Cir. 1959) (discussing *United States ex rel. Southern R.R Co. v. D.L. Taylor Co.*, 268 F. 635, 644 (E.D.N.C. 1920), *aff'd*, 277 F. 945 (4th Cir. 1921)).

5

contractor, is responsible, pursuant to the Miller Act, for the contractual obligations of Osment, which in this case include repair costs for "any damage to the Equipment and for any missing parts or accessories." As with the surety in *Llewellyn*, Swiss Re was free to prohibit Parker or Osment from agreeing to this term; however, because it did not there is no reason to disregard the imposition of liability for repair costs evident in the rental agreement, the Miller Act, and the Fifth Circuit's ruling. Swiss Re also cannot avail itself of the rental agreement's exclusion of liability for repairs due to ordinary wear and tear because it has conceded, in its attempt to avoid liability for all repair costs, that "the repairs in question were clearly not for ordinary wear and tear." Def.'s Brief at p.9. Thus, Swiss Re, as surety, is liable for $10,749.12 in repair costs originally owed by Osment.

**Attorneys' Fees In General**

In *United States ex rel. Carter Equipment v. H.R. Morgan, Inc.*, the Fifth Circuit held, in a scenario almost identical to the present one, that a contractual provision for attorneys' fees between a subcontractor and its supplier was enforceable against the general contractor and its surety under the Miller Act. 554 F.2d 164 (5th Cir. 1977). Despite this approval of a Miller Act surety's liability for attorneys' fees, Swiss Re cites *United States ex rel. American Bank v. C.I.T. Construction, Inc.*, 944 F.2d 253 (5th Cir. 1991), as evidence of the Fifth Circuit's departure from its holding in *H.R. Morgan*.[5] This case, however, is unconvincing; it neither contains similar facts nor implicates the Miller Act's remedial purpose.

In *C.I.T. Construction, Inc.*, a general contractor sought to recover attorneys' fees from a

---

[5] *United States ex rel. Howell Crane Service v. U.S. Fidelity & Guar. Co.*, 861 F.2d 110 (5th Cir. 1988) and *United States ex rel. Vulcan Materials v. Volpe Construction*, 622 F.2d 880 (5th Cir. 1980), additional cases Swiss Re cites as contrary to *H.R. Morgan*, are inapposite. Neither case involved a contract permitting recovery of attorneys' fees, a direct requirement according to the Supreme Court's holding in *F.D. Rich Co.* that attorneys' fees "are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." 417 U.S. at 2163 (quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967).

subcontractor's lender who had previously filed suit, under the Miller Act, against the general contractor. 944 F.2d at 255-56. In denying the general contractor's request, the court looked to which parties had privity to the contract permitting recovery of attorneys' fees. *Id.* at 256, n.4. After noting that the only the general contractor and subcontractor shared privity, the court concluded that the general contractor could not recover attorneys' fees from a lender without privity. Swiss Re argues that the court's reference to *H.R. Morgan* but subsequent discussion of privity to the contract allowing recovery of attorneys' fees precludes Regency from recovery in this case. Just as the lender in *C.I.T. Construction* had not been a party to the contract permitting recovery of attorneys' fees, Swiss Re also was not a party to the contract between Osment, the subcontractor, and Regency; therefore, Swiss Re cannot be held liable for attorneys' fees.

Although Swiss Re is indeed not an express party to the contract between Osment and Regency, its attempt to analogize itself with the lender in *C.I.T. Construction* is misplaced. The Miller Act's stated purpose is to "protect those who furnish labor or material for public works," *Glassell-Taylor Co.*, 153 F.2d at 529-30, by giving subcontractors and other suppliers the right to sue on a payment bond posted by general contractors and their sureties. *See* 40 U.S.C. §§ 3131, 3133. Accordingly, liability of a general contractor or surety does not require privity of contract with the party suing under the payment bond, *United States ex rel. Hill v. Am. Sur. Co. of New York*, 200 U.S. 197, 203, 204 (1906); *Price v. H.L. Coble Const. Co.*, 317 F.2d 312, 317 n.2 (5th Cir. 1963), and a supplier may recover all unpaid amounts due under a contract with a subcontractor. This however, was not the scenario in *C.I.T. Construction* where the general contractor, a party not subject to the Miller Act's protections, sought to recover attorneys' fees from a lender. In such a circumstance where the facts did not implicate the Miller Act's remedial purpose, the court properly required a showing of privity between the general contractor and the lender. To hold otherwise,

would be to allow a general contractor to take advantage of the exact party the Miller Act was intended to protect.

The present facts, which are the direct converse of those in *C.I.T. Construction*, closely parallel those in *H.R. Morgan*, and there is no reason to depart from the Fifth Circuit's ruling in that case. As intended under the Miller Act, Regency, a supplier of construction equipment, seeks to recover from Swiss Re, a surety, attorneys' fees pursuant to a rental contract with Osment, a subcontractor. This is precisely the scenario the Fifth Circuit encountered when it held in *H.R. Morgan* that a supplier or subcontractor could enforce a contractual provision for attorneys' fees against a surety. Furthermore, none of the cases Swiss Re cites as contrary authority either repudiate this ruling or weaken it in any sense. Indeed, the absence of a supplier attempting to enforce a contractual provision for attorneys' fees in each of the cases Swiss Re cites only reinforces the holding in *H.R. Morgan*. In sum, Regency, as supplier of materials and intended beneficiary under the Miller Act, may enforce a contractual provision for attorneys' fees against Swiss Re, a Miller Act surety.

**Attorneys' Fees Enforced as Discovery Sanctions**

Lastly, Swiss Re's argument that it should not be held liable for the portion of attorneys' fees awarded against Parker as discovery sanctions is without merit. As stated above, pursuant to the rental agreement with Osment and the Miller Act, Regency may recover from Parker and Swiss Re "all costs and reasonable attorney's fees incurred by Lessor [Regency]." ¶3 of Rental Agreement. This provision makes no distinction between attorneys' fees resulting from normal litigation costs and those associated with Parker's evasive and improper discovery responses. In either case, the amounts are attorneys' fees incurred by Regency in an attempt to recover payment under the rental agreement, and whether awarded as a result of discovery sanctions or as a result of any other aspect

of the litigation, are still recoverable from Swiss Re under the contract's attorneys' fees provision. The undersigned notes that the amounts previously awarded have already been determined to be reasonable, and Regency therefore need not provide additional evidence of the reasonableness of the fees.

## **CONCLUSION**

Swiss Re has failed to demonstrate that, as a surety under the Miller Act, it should not be held liable for any of the repair costs or attorneys' fees sought by Regency. Consistent with the Fifth Circuit's liberal interpretation of the rights secured by the Miller Act, Regency may recover from Swiss Re all "labor and materials" provided to Osment and Parker, including repair costs to damaged equipment. Additionally, due to the terms of the contract between Regency and Osment, Swiss Re, as surety of Parker, is liable for all reasonable attorneys' fees that Regency incurred throughout this litigation, including those previously awarded as discovery sanctions. It is therefore recommended that Regency's Motion for Summary Judgment be **GRANTED**; that Swiss Re's Motion for Summary Judgment be **DENIED**; and that judgment be entered against Swiss Re, as surety for Parker, in the principal amount of $51,801.12 and $25,925.02 in attorneys' fees, plus legal interest from the date of the default judgment against Parker, $3,118.38 in attorneys' fees awarded against Parker as discovery sanctions, plus legal interest from the date of the respective awards, and for those reasonable attorneys' fees incurred in the continued prosecution of this action.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or

response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 4th day of October, 2005.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE